Keating, J.
This is an article 78 proceeding to review and annul the action of the Superintendent of Insurance in approving a merger of American Surety Company of New York (American) and Transameriea Insurance Company (Insurance). Petitioner owns 1,352 shares of American (less than Mo of 1% of the issued and outstanding stock). Transameriea Corporation (Transameriea) owned 100% of the stock of Insurance and, prior to the merger, over 97 % of the stock of American.
In October, 1963, American stockholders received notice of a proposed merger to he effective December 31, 1963. The proposed merger agreement between American (97% — owned by Transameriea) and Insurance (wholly owned by Transameriea) provided that minority stockholders of American would receive $25.74 per share for their stock.
Petitioner voted against the merger at the special stockholders’ meeting but it was approved by 98% of the stock. The agreement was then submitted to the Superintendent of Insurance for his approval, in accordance with section 486 of the Insurance Law.
The Superintendent, after receiving and considering a letter of objection on behalf of dissenting stockholders, informed the companies that he would approve the merger if Transameriea first transferred to Insurance all of the American stock which it owned. The reason for this was an Insurance Department policy rejecting mergers involving “ freeze-outs ” unless one of the merging companies owned virtually all of the outstanding-stock of the other.
Thereafter, all of the American stock owned by Transameriea was transferred to Insurance, the latter thereby becoming the owner of over 97 % of American stock. On December 26, 1963, the Superintendent gave his approval. The merger became effective December 31,1963, and by its ternas Ml of the American *200 stock would be cancelled, with minority stockholders receiving $25.74 per share while Insurance, as the surviving company, would receive no payment for the American stock it owned.
On February 14, 1964, petitioner and others instituted an appraisal proceeding pursuant to section 503 of the Insurance Law. Petitioner thereafter filed the present petition seeking a review of the propriety and legality of the Superintendent’s action in approving the merger. The relief sought in the petition was that the Superintendent’s approval be set aside and nullified and the merger dissolved. The appraisal proceeding has been stayed pending final determination of this proceeding.
In its first opinion on respondents’ motion to dismiss, the trial court was unaware that Insurance owned any American stock. The court noted that the Legislature had allowed freeze-outs where one of the merging corporations owned 95% of the stock of the other (Stock Corporation Law, § 85[1]). Since the court believed there was no section 85 situation, approval of the plan as alleged was said to be improper and the motion to dismiss was denied.
However, on reargument with all the facts at hand, the court held that while the allegations of fraud set forth adequately— though imprecisely — a valid cause of action, that part of the petition objecting to the freeze-out failed to state a cause of action.
Since the petition mingled valid allegations with others legally insufficient, the motion to dismiss was granted but without prejudice to petitioner’s commencement of a new proceeding upon a proper pleading.
On appeal, the Appellate Division, in exercise of its discretion, struck out the leave granted petitioner to serve an amended petition, and, in lieu thereof, provided that petitioner may apply to Special Term for leave to replead.
Section 486 provides that the Superintendent shall approve a merger if he is satisfied that it “ is fair and equitable, and is not inconsistent with the laws and the constitution of this state and of the United States and that no reasonable objection exists thereto ’ ’. Petitioner contends that the Fourteenth Amendment prohibits a freeze-out and that the Superintendent’s approval deprived him of due process and equal protection of the law.
*201 The constitutional rights which petitioner asserts have been denied by conrts in several jurisdictions. Quite obviously, if a minority stockholder has a constitutional right to preserve his status as a stockholder in the surviving corporation, then section 85 of the Stock Corporation Law would be unconstitutional. That section provides that a corporation which owns at least 95% of the stock of another may merge that other corporation merely by resolution of its board of directors and, ‘ ‘ in case the possessor corporation shall not own all the outstanding stock of the other corporation to be merged, the resolution of the board of directors of the possessor corporation shall state the terms and conditions of the merger, including the securities, cash or other consideration to be issued, paid or delivered by the possessor corporation upon surrender of each share of the merged corporation not owned by the possessor corporation ”.[2]
This statute clearly anticipates a “ cash payout” by which minority stockholders may be frozen out of continued participation in the merged corporation. Similarly, section 253 of the Delaware Corporation Law allows a freeze-out where the possessor corporation owns at least 90% of the stock of the subsidiary. (See, also, American Law Institute’s Model Business Corporation Act, § 68A.)
The Delaware statute was upheld against constitutional challenges similar to those in the present case (Coyne v. Park & Tilford Distillers Corp., 38 Del. Ch. 514). The Delaware Supreme Court noted that the Delaware statute was patterned after that of New York.
We ourselves have previously upheld the validity of section 85. In Beloff v. Consolidated Edison Co. (300 N. Y. 11), where minority stockholders were forced to surrender their stock for cash, we recognized that, where a merger is consummated in accordance with statutory procedures, the remedy of appraisal and payment is the only one available to dissenting stockholders. “ In short, the merged corporation’s shareholder has only one real right; to have the value of his holding protected, and that protection is given him by his right to an appraisal (see Voeller v. Neilston Warehouse Co., 311 U. S. 531, 535). He has no right to stay in the picture, to go along into the merger, or to share *202 in its future benefits. He has no constitutional right to deliberate, consult or vote on the merger, to have prior notice thereof or prior opportunity to object thereto. His disabilities in those respects are the result of his status as a member of a minority, and any cure therefor is to be prescribed by the Legislature, if it sees fit. In none of this do we see any deprivation of due process, or of contract rights.” (300 N. Y., p. 19.)
The remedy of an appraisal and payment for one’s shares affords fair and just compensation to dissenting stockholders while allowing the overwhelming majority to proceed with the merger. (See Anderson v. International Mins. & Chem. Corp., 295 N. Y. 343.) So long as the value of petitioner’s interest is compensable, he has no constitutionally protected right to continue as a stockholder.
The Insurance Law itself contains no short merger statute such as section 85 nor does it have any prohibition. Nor, at the time of the merger, did the Insurance Law contain any bridge provision tying it into the Stock Corporation Law. Section 2 of the Stock Corporation Law provided that such law should apply to any stock corporation “ except as to matters for which provision is made in any other ‘ corporate law’ ”. Since the Insurance Law had its own provisions regarding merger, the direct applicability of section 85 is not clear. We note, however, that the Legislature has since clarified the relation between the various corporate laws. Section 7 of the Insurance Law now provides that the Business Corporation Law shall apply to insurance companies except where it conflicts with any provision of the Insurance Law. If an Insurance Law provision relates to a matter embraced in the Business Corporation Law, but is not in conflict therewith, both provisions apply.
Since the short merger statute has been enacted in the Business Corporation Law (§ 905) and since it does not conflict with any provision in the Insurance Law, it is clear that, if the present case had arisen after September 1, 1964, sections 905 of the Business Corporation Law and 486 of the Insurance Law would both apply, thus giving direct statutory authority for the Superintendent’s approval of a short merger with a cash payout. As it is, since mergers of stock insurance companies were authorized (Insurance Law, § 481), it was neither unreasonable, arbitrary, nor capricious for the Superintendent, when considering *203 proposed mergers, to adopt as a standard that set by the Legislature in respect of other types of stock companies. •
It is well-settled that the determination of an administrative agency will be accepted by the courts if it has warrant in the record and a reasonable basis in law. (Matter of Marsh [Catherwood], 13 N Y 2d 235.) In Matter of Mounting & Finishing Co. v. McGoldrick (294 N. Y. 104, 108), we said: “ Of course, statutory construction is the function of the courts ‘ but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court’s function is limited ’ (Board v. Hearst Publications, 322 U. S. 111, 131). The administrative determination is to be accepted by the courts ‘ if it has “ warrant in the record ” and a reasonable basis in the law ’ [Board v. Hearst Pub., supra, p. 111]. ‘ The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body ’ (Rochester Tel. Corp. v. U. S., 307 U. S. 125, 146).”
In their protest to the Superintendent, the dissenting stockholders objected to the fairness of the valuation at $25.74 per share. This amount was arrived at by Insurance on the basis of an independent valuation made by Blyth & Co., Inc. In the opinion of Blyth, the fair value of American stock lay between $24.54 and $25.74 per share. An experienced insurance examiner made an independent appraisal and found that the fair value was $24.98 per share. The payment of $25.74 exceeded this amount and the examiner concluded that such payment was fair and equitable. Based on these facts, the Superintendent clearly acted reasonably and rationally. We hold that his approval was warranted by the record and has a reasonable basis in law.
Our concern with the fairness of the amount paid is dictated by the fact that section 486 of the Insurance Law requires the merger agreement to be fair and equitable before the Superintendent approves it. Our inquiry, however, is limited to the reasonableness and rationality of the Superintendent’s act. This article 78 proceeding is not the proper vehicle for determining the actual value of the stock. Such a procedure is provided solely and exclusively by section 503 of the Insurance Law and petitioner has in fact already joined in such judicial *204 appraisal proceedings. Appraisal proceedings determine the full value of stock prior to the action against which a stockholder dissents, including every item of value that can be established such as corporate causes of action which might have accrued. (Beloff, supra; Blumenthal v. Roosevelt Hotel, 202 Misc. 988; Matter of Tabulating Card Co. v. Leidesdorf, 17 Misc 2d 573.)
On the other hand, it has been a judicial principle that equity will act — despite the existence of an appraisal remedy — where there is fraud or illegality (see Eisenberg v. Central Zone Property Corp., 306 N. Y. 58, and Burg v. Burg Trucking Co., 26 Misc 2d 619), and this principle was recently codified in section 623 (subd. [k]) of the Business Corporation Law. If petitioner could spell out charges of actual fraud, they may be relevant to a determination of whether the Superintendent acted arbitrarily or capriciously in approving the merger in disregard of reasonable objections raised. However, as the court below ruled in the proper exercise of its discretion, petitioner has made no showing that he “has good ground to support his cause of action ” (CPLR. 3211, subd. [e]) on the theory of a failure and refusal of the Superintendent to evaluate the merger in light of the alleged fraud. (See, also, CPLR 3013.) The petition contains allegations of fraud but does not give any factual support nor does it indicate that such claims will furnish a basis for an attack upon the Superintendent in an article 78 proceeding. Therefore, the Appellate Division correctly struck the leave granted by the trial court to replead the allegations of fraud and required petitioner to apply to Special Term for leave to replead.
The order of the Appellate Division should be affirmed, with costs.
Chief Judge Desmond and Judges Fuld, Van Voobhis, Bueke, Scileppi and Bebgan concur.
Order affirmed.

. Known ns the “short merger” statute.

. The corresponding provision in the new Business Corporation Law is section 905.