Sol PELLMAN, Plaintiff,

and

Edith Zakheim and Walter Zakheim, Intervenor–Plaintiffs,

v.

CINERAMA, INC., Forkel, Inc., Forkel Enterprises, Inc., Pacific Theatres Corp., Nationwide Theatres Corp., William R. Forman, Michael R. Forman, Harry S. Buxbaum, James J. Cotter, Frederick Levy, Jr., Charles P. Emma, Hotel Operating Company of Hawaii, Ltd., Roy C. Kelley, Estelle L. Kelley and Richard R. Kelly, Defendants.

No. 78 Civ. 4508.

United States District Court, S. D. New York.

Nov. 7, 1980.

Milberg, Weiss, Bershad & Specthrie, New York City, for plaintiff and intervenor–plaintiffs by David J. Bershad, Jerome M. Congress, New York City.

Stroock & Stroock & Lavan, New York City, for defendants by Gary J. Greenberg, Melvin A. Brosterman, David S. Welkowitz, New York City.

## MEMORANDUM OPINION AND ORDER

### SOFAER, District Judge:

Plaintiffs in this class action allege federal securities law violations in conjunction with the merger by which Cinerama Corporation went private. Defendants have moved to dismiss the complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and for failure to plead fraud with sufficient particularity, Fed.R.Civ.P. 9(b). In their many pages of supporting papers, defendants attempt to characterize plaintiffs' federal claims as based upon state–law fiduciary breaches and therefore barred by *Green v. Santa Fe Industries, Inc.*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Yet defendants can only invoke *Santa Fe* by distorting the allegations in the complaint. For while plaintiffs' grievances do indeed involve conduct that, if true, constituted a breach of defendants' fiduciary duties, plaintiffs' complaint at the same time alleges numerous violations traditionally cognizable under the federal securities laws.

This case revolves around defendant Cinerama Corporation's going–private merger into Forkel Enterprises, Inc., in August 1978. Plaintiffs (including intervenor–plaintiffs) are former Cinerama shareholders. Defendants are various officers, directors, and controlling shareholders of Cinerama. Plaintiffs allege that defendants manipulated the market price of Cinerama stock and obtained shareholder approval of the merger by means of a materially false and misleading proxy statement. Plaintiffs contend that these actions violated sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), and Rules 10b–5 and 14a–9, 17 C.F.R. §§ 240.-10b–5, 240.14a–9 (1980), and constituted common law fraud and breach of fiduciary duties under state law.

The original complaint was filed on September 25, 1978. Defendants moved for summary judgment on the issue of reliance and causation and for dismissal for failure to state a claim. After extensive briefing and oral argument, this Court indicated on February 6, 1980 that it would deny the motion for summary judgment, but expressed doubts as to the sufficiency of some of plaintiffs' allegations and granted leave to amend. Plaintiffs filed an amended complaint on March 27, 1980, but defendants renewed their motion to dismiss.

With respect to the purported failure to state a claim, the complaint's allegations must be accepted as true, and all inferences must be drawn in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Supreme Court has instructed that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted).

Defendants seem oblivious to these universally recognized principles. Their papers are replete with characterizations of the complaint's allegations that range from unfavorable inferences to distortions. Defendants insist, for example, that while plaintiffs' brief discusses a conspiracy to manipulate the market for Cinerama stock, "[n]o such allegation appears in the amended complaint." Reply Memorandum in Further Support of Defendants' Motion to Dismiss (hereinafter referred to as "Defendants' Reply Memorandum"] at 4. In fact,

however, the complaint alleges that, in order to freeze out public shareholders at a low price, "defendants took various steps and made various decisions which resulted in an artificial reduction of Cinerama's reported income and which concealed from the public Cinerama's potential for improved operations and the true values of Cinerama's assets." Complaint ¶ 30. The complaint goes on to specify five such acts.[1]

Plaintiffs also allege that the proxy statement was misleading in that it failed to disclose that one of the controlling shareholders, Richard Kelly, had purchased large numbers of shares prior to the merger; "the information omitted would have indicated to the public shareholders that Richard Kelly ... generally believed Cinerama was a good investment on a long–term basis despite its ostensible economic difficulties during the 2½ years proceeding the freeze-out proposal." Complaint ¶ 36(a). Plaintiffs contend that such disclosure would have suggested that Kelly was "not merely 'stuck' with an investment in Cinerama made many years ago," but rather that he believed in its "viability and long–run profitability." Plaintiffs' Memorandum in Response to Defendants' Memorandum in Further Support of the Motion to Dismiss [hereinafter cited as "Plaintiffs' Memorandum"] at 19.

■ Defendants offer two replies. First, they contend that the allegation "is an attempt to prosecute defendants for alleged beliefs rather than acts." Defendants' Reply Memorandum at 7. But it is defendants' failure to report the purchases–not their "beliefs"–that is purportedly actionable. Second, defendants argue that "as a matter of law, the Court should conclude that the details of when Kelly purchased shares would not have been deemed signifi-

cant by a reasonable investor." *Id.* Given the Supreme Court's admonition against adjudicating materiality on motions for summary judgment, *see TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), defendants could not prevail on this motion to dismiss unless all inferences were drawn in *their* favor. Plaintiffs' allegation that this information would have been significant to investors being given rather pessimistic predictions as to Cinerama's future is entirely reasonable.

■ Defendants' two other arguments on the Rule 12(b)(6) motion require little comment. Thus they assert that *Green v. Santa Fe Industries, supra*, and other securities–law decisions indicate that the Supreme Court desires to narrow drastically the scope of federal securities liability. This is no occasion to engage in jurisprudential prognostication, however, for it is perfectly clear that *Santa Fe* does not bar the traditional claims advanced in this complaint. Plaintiffs allege breaches of various fiduciary duties, but they also attack these actions as fraudulent and deceptive practices proscribed by section 10(b). *Santa Fe* never intended to oust from the federal courts a case in which valid allegations of deception were made, simply because the actions also involved fiduciary breaches. Otherwise, officers and directors would be immune from federal liability whenever their misconduct also happened to violate state–law fiduciary duties.

Defendants also contend that, insofar as plaintiffs allege that the merger price was inadequate, they should be remitted to their state appraisal remedy. True, plaintiffs are dissatisfied with the freezeout price. But their allegations are much broader and state serious violations of federal law.

---

1. Thus, the complaint alleges that "[d]efendants timed Cinerama's sale of certain theatre properties at a loss so as to reduce Cinerama's reported profits prior to the shareholder vote on a going–private merger." Complaint ¶ 30(d). Defendants contend that "[p]aragraph 30(d) not only misstates the facts–since the profits and losses on theatre sales for the previous five years were disclosed–but does not

make any connection between the theatre sales and the stock prices." Defendants' Reply Memorandum at 5. But the paragraph in question does not claim that these figures were undisclosed, and assuming the truth of plaintiffs' allegation, they might well establish at trial that the purported loss sale depressed Cinerama's stock prices artificially.

The serious limitations of state appraisal proceedings counsel against too readily remitting plaintiffs to that remedy. Several of the defects are procedural in nature. Dissenting shareholders in an appraisal proceeding cannot sue individuals guilty of fraudulent conduct, but must restrict their claims to the corporation; in this case, therefore, the individual defendants would be immune from liability. Class relief, moreover, is unavailable in an appraisal proceeding. Dissenting shareholders must individually object to the merger, request appraisal, and turn in their certificates. *See* N.Y. Business Corporation Law § 623(a), (c), (f) (McKinney 1963). In a complex securities action such as this case, the damages sustained by individual shareholders would often not be great enough to justify vigorous prosecution of the suit except as a class action. *See Werfel v. Kramarsky*, 61 F.R.D. 674, 682 (S.D.N.Y.1974); *Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 489 (N.D.Ill.1969). The economic realities of an appraisal proceeding brought by individual shareholders with relatively small claims would make it unlikely that the dissenters would conduct extensive discovery or retain qualified expert witnesses–as the record in the Cinerama appraisal demonstrates.[2] To the extent that other shareholders were, as plaintiffs claim, successfully deceived by defendants, they were unaware of the unduly low merger price; these shareholders did not follow the requisite procedures and have waived their appraisal rights.

A state appraisal proceeding also suffers from substantive defects when contrasted with a federal securities action. Plaintiffs claim that the appropriate relief in this case would be recissionary damages, which, in lieu of actual recission, would place them in the position that they would have been in absent the fraudulent freezeout. Such damages are unavailable in an appraisal proceeding, in which valuation is determined as of the day prior to shareholder approval of the merger. N.Y. Business Corporation Law § 623(h), (f) (McKinney 1963). *Cf. Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1332–33 (7th Cir. 1969) (holding that appraisal is not exclusive remedy in 10b–5 action, in part because recission would be unavailable). Moreover, plaintiffs allege that part of defendants' scheme was to depress Cinerama's stock prices artificially; yet the appraiser in the Cinerama proceeding utilized the market price. Commentators in recent years have argued persuasively that the appraisal remedy simply cannot provide adequate relief to victims of an unfair freezeout and must be replaced by different valuation approaches. *See generally* Brudney, *A Note on Going Private*, 61 Va.L.Rev. 1019 (1975); Brudney & Chirelstein, *A Restatement of Corporate Freezeouts*, 87 Yale L.J. 1354 (1978); Brudney & Chirelstein, *Fair Shares in Corporate Mergers and Takeovers*, 88 Harv.L.Rev. 297 (1974); Manning, *The Shareholder's Appraisal Remedy*, 72 Yale L.J. 223 (1962).

Accordingly, numerous courts have held that appraisal is not an exclusive remedy in the 10b–5 context. *See, e. g., Healey v. Catalyst Recovery of Pennsylvania, Inc.*, 616 F.2d 641 (3d Cir. 1980); *Swanson v. American Consumer Industries, Inc., supra.* The New York appraisal statute itself provides that appraisal is not an exclusive remedy when the shareholder sues on grounds of fraud or illegality. N.Y. Business Corporation Law § 623(k) (McKinney 1963); *see Willcox v. Stern*, 18 N.Y.2d 195, 204, 273 N.Y.S.2d 38, 45, 219 N.E.2d 401, 405 (1966). Federal courts should invoke state appraisal proceedings as an exclusive remedy only when a complaint is clearly limited to state–law fiduciary claims.

Defendants also seek dismissal because the complaint fails to allege fraud with the particularity required by Rule 9(b). The

---

2. Only eleven shareholders sought appraisal of their Cinerama stock. They owned 10,837 shares–less than .5% of the issued and outstanding stock. The dissenters conducted no depositions, and their only witness was an accountant. The dissenters presented no expert testimony as to the values of Cinerama stock, of its real estate assets, or of its tax–loss carry-forward.

Court of Appeals for the Second Circuit has held that "a plaintiff alleging fraud in connection with a securities transaction must specifically allege the acts or omissions upon which his claim rests. It will not do merely to track the language of Rule 10b–5 and rely on such meaningless phrases as 'scheme and conspiracy' or 'plan and scheme and course of conduct to deceive.' A defendant is entitled to a reasonable opportunity to answer the complaint and must be given adequate information to frame a response." *Ross v. A. H. Robins Co., Inc.*, 607 F.2d 545, 557–58 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *see Segal v. Gordon*, 467 F.2d 602, 606–08 (2d Cir. 1972).

■ The complaint here satisfies the requirements of Rule 9(b). It does not simply assert fraudulent or deceptive conduct, but instead reasonably details the bases for those allegations. What defendants seem to demand is a pretrial memorandum containing all the evidentiary support for plaintiffs' case. As the Court of Appeals observed in *Ross*, "Rule 9(b) cannot be viewed in vacuo. 'The requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives ... of Rule 8 that the pleadings contain "a short and plain" statement of the claim or defense and [that] each averment should be "simple, concise and direct." Rule 9(b) does not require nor make legitimate the pleadings of detailed evidentiary matter.'" 607 F.2d at 557 n.20 (quoting 2A Moore's Federal Practice ¶ 9.03 at 1929–30).

■ Defendants assert that the allegations of fraud are improperly pleaded upon information and belief. On the contrary, many of the allegations are factual. Moreover, plaintiffs may properly plead upon information and belief as to matters that are peculiarly within the defendants' knowledge. *See, e. g., Felton v. Walston & Co., Inc.*, 508 F.2d 577, 582 n.6 (2d Cir. 1974); *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Given the limited nature of plaintiffs' discovery to date (some document pro-

duction but no depositions), the allegations are sufficient.

Defendants also protest that plaintiffs fail to attribute the acts complained of to individual defendants with sufficient specificity. The defendants here are all insiders, however, and numerous courts have held that the conduct of such individuals need not be specified if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer. *See, e. g., Helfant v. Louisiana & Southern Life Insurance Co.*, 82 F.R.D. 53, 57 (E.D.N.Y.1979); *Barotz v. Monarch General, Inc.*, [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,933 at 97,238 (S.D.N.Y.1975). Plaintiffs have alleged that all defendants participated in the issuance of the proxy statement. Defendants' vigorous factual attack on the allegations demonstrates that they have ample information with which to present their defense, and they can acquire additional details in discovery.

The motion to dismiss is denied.

So ordered.