Edward BOARDMAN, Plaintiff,

v.

Simon LIPTON, Leung Wing Leung
and Frank Masandrea, Defendants.

No. 84 Civ. 1214 (RWS).

United States District Court,
S.D. New York.

March 20, 1985.

Martin Sulkow, P.C., New York City, for
plaintiff; Howard R. Birnbach, Martin Sul-
kow, of counsel.

Jeffrey T. Vail, P.C., New York City, for
defendants; Jeffrey T. Vail, of counsel.

SWEET, District Judge.

Plaintiff Edward Boardman ("Board-
man") brought this action alleging viola-
tions of Section 10(b) of the Securities Ex-
change Act of 1934, breach of fiduciary
duty, breach of contract, and conversion.
Defendants Simon Lipton ("Lipton"),
Leung Wing Leung ("Leung") and Frank
Masandrea ("Masandrea") now move for
summary judgment pursuant to Fed.R.
Civ.P. 56. For the following reasons, the
motion is granted.

**Facts**

This action arises out of the formation
and operation of Dynasty Apparel Corpora-
tion ("Dynasty"), a company involved in the
business of designing, manufacturing and
selling women's better wearing apparel
that was formed in March of 1983 by the
parties to this action. At that time, Board-
man, Lipton and Leung were each issued
ten shares of the common stock of Dynas-
ty, representing a one-third interest each in
the corporation. In exchange for these

shares, Leung and Lipton each contributed $5,000 and agreed to make various loans to the corporation. Boardman's capital contribution was limited to $135 and he was not required to make any loan to the corporation. Masandrea was given an option to acquire not less than 10% of the equity of Dynasty for a nominal consideration. According to Boardman, it was agreed that he would enter into a three-year employment contract with the corporation. The defendants, however, claim that Boardman was an employee engaged at will and that no employment agreement was ever contemplated.

After the commencement of corporate operations, disputes arose between Boardman and the other corporate directors, officers and employees. In November of 1983, Lipton, the president of Dynasty, advised Boardman that his employment had been terminated. According to Boardman, he was subsequently locked out of the business premises and threatened with eviction by armed guards.

In December of 1983, it was decided at a shareholder's meeting at which Boardman was represented by his proxy and attorney Martin Sulkow that additional funds would be made available to the corporation. According to the defendants, this decision was made on the demand of Dynasty's factors, Rosenthal & Rosenthal ("Rosenthal") because of operating losses sustained by Dynasty. Lipton and Leung each made further capital contributions of $5,000 and loans of $25,000 to the corporation in exchange for fifty additional shares each of Dynasty's common stock. Boardman contends that the issuance of fifty times the amount of authorized issued stock was also authorized at that meeting. According to the defendants, Boardman declined an invitation to participate in the additional capitalization program upon the same terms and conditions as were made available to Leung and Lipton.

In his complaint, Boardman contends as the basis of his securities fraud claim that in November of 1983 the defendants entered into a conspiracy to fraudulently squeeze Boardman out of Dynasty by buying his shares at an artificially reduced price. He claims that they falsely represented the financial demands of Rosenthal and the need for additional capitalization, sent him a false financial report designed to lower his estimation of his own shares, and authorized the issuance of additional stock all for the purpose of watering his one-third holding and acquiring his shares at a fraction of their worth. He also asserts claims of breach of fiduciary duty, breach of contract and conversion under the doctrine of pendent jurisdiction.

**Discussion**

In their motion papers, the defendants argue that because the manipulations and fraud alleged in the complaint did not involve the "purchase and sale of any security," the complaint fails to state a claim under Section 10(b) of the Securities and Exchange Act of 1934, and that there being no valid federal claim, this court is without pendent jurisdiction over the subject matter of any of the other claims asserted.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), makes it unlawful for any person:

To use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device ... in contravention of such rules and regulations as the Commission may prescribe ...

Rule 10(b)–5, 17 C.F.R. § 240.10b–5 (1976) provides:

It shall be unlawful for any person, directly or indirectly ... to employ any device, scheme or artifice to defraud ... in connection with the purchase or sale of any security.

The Supreme Court has held that private rights of action under Rule 10(b)–5 can only be brought by a purchaser or seller of securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). In *Blue Chip*, the plaintiffs claimed that defendants had violated Rule 10b–5 by offering a deceptively pessimistic portrayal of a company to induce plaintiffs not to buy shares. The

Court denied standing to those plaintiffs who had refrained from purchasing shares. In support of its conclusion, the court noted that on two occasions the Securities and Exchange Commission attempted to have Congress amend the language of § 10(b) to read "in connection with the purchase or sale of, or any attempt to purchase or sell, any security," and that on both occasions the amendment was not adopted. 421 U.S. at 732, 95 S.Ct. at 1924.

In the case at hand, the complaint does not allege fraud in connection with Boardman's original purchase of his shares in the corporation. Instead, Boardman's expressly stated that the defendants entered into a conspiracy to defraud him in November of 1983, eight months after he purchased the original securities. Complaint, ¶ 10. Although he suggests in his affidavit submitted in opposition to the present motion that the defendants were already plotting to manipulate the price of the shares and diminish his interest in the company at the time that the corporation was established, the complaint includes no allegation that the defendants acted fraudulently in connection with the purchase or sale of any security.

■ Instead, Boardman claims only that the defendants attempted to convince him to sell his shares at a reduced price and that their actions diluted the value of those shares. However, mere ownership of shares is not enough to establish a cause of action under § 10(b), no matter how manipulative or deceptive the actions taken by the defendants might have been. Where a plaintiff has neither purchased or sold securities, he may not invoke the statutory remedy. *See Greenstein v. Paul*, 400 F.2d 580 (2d Cir.1968) (non-selling stockholder had no cause of action where defendants' allegedly conspired to depress value of corporations stock to effectuate a "freeze-out" of minority shareholders.)

■ Boardman cites three cases in support of his allegation that he has met the statutory requirements. *See Competitive Assoc. Inc. v. Laventhol, K.H. & H.*, 516 F.2d 811 (2d Cir.1975); *Merrit v. Libby*,

*McNeill & Libby*, 510 F.Supp. 366 (S.D.N.Y.1981); *Pellman v. Cinerama, Inc.*, 503 F.Supp. 107 (S.D.N.Y.1980). In each case, however, the plaintiffs either brought or sold securities in reliance on false financial data. In the present case, Boardman has not alleged that he either bought, sold or refrained from buying or selling securities in reliance on any fraud perpetrated by the defendants. Because Boardman has not alleged in his complaint that the defendants engaged in fraud in connection with his original purchase of stock, and because he did not actually sell that stock at any time, he has failed to state a claim under § 10(b) or Rule 10(b)–5. Boardman's first claim for relief in the complaint, therefore, must be dismissed.

■ Boardman bases federal court jurisdiction over the remaining counts in his complaint upon the doctrine of pendent jurisdiction. Because Boardman has failed to state a claim forming a proper basis for federal jurisdiction, the doctrine of pendent jurisdiction cannot be invoked to bring his non-federal issues before this court. *See Brayton v. Ostrau*, 561 F.Supp. 156 (S.D.N.Y.1983); *Natowitz v. Mehlman*, 542 F.Supp. 674 (S.D.N.Y.1982). The remaining counts of Boardman's complaint must therefore be dismissed.

For the reasons discussed, the defendants' motion for summary judgment is granted and the case is dismissed. The clerk is directed to enter judgment.

**IT IS SO ORDERED.**