OPINION OF THE COURT
Renee R. Roth, S.
The issue in this application to compel the production of *696 documents in the estate of Nathaniel Colby is whether the executrix, Ruth Goldberg, may waive decedent’s attorney-client privilege.
The question arises in connection with an action for fraud brought in the Supreme Court by Mrs. Goldberg as decedent’s guardian under article 81 of the Mental Hygiene Law about a year before decedent’s death at the age of 94. The basis of the complaint is that the defendant, to whom decedent had sold his majority interest in a closed corporation (Solgar Co.) in 1990, took advantage of decedent’s then diminished capacity to induce him to sell at a price allegedly $48 million below fair market value. Now prosecuting the complaint on behalf of decedent’s estate, Mrs. Goldberg seeks to compel the lawyers who advised decedent on estate planning and related matters during the late 1980’s to produce documents reflecting communications between them and decedent concerning Solgar’s value.
The law governing the attorney-client privilege (CPLR 4503 [a]) provides, in relevant part, that, “[u]nless the client waives the privilege, an attorney * * * shall not disclose” a confidential communication between the two of them arising as an incident of the attorney’s professional employment. Although the statute thus makes clear that the attorney himself cannot waive the privilege, it does not explicitly establish whether — where a waiver would benefit his lifetime or surviving interests — the client may exercise his right of waiver indirectly, i.e., through a personal representative, when disability or death prevents him from doing so directly.
The few appellate decisions that have addressed this issue have done so only in dictum (Westover v Aetna Life Ins. Co., 99 NY 56, 59; Matter of Levinsky, 23 AD2d 25, 31) or in a case that is distinguishable because the statements covered by the privilege were self-serving and inadmissible as hearsay in any event (Matter of Fishman, 32 AD2d 1063, affd 27 NY2d 809). The other jurisdictions which have considered the issue, however, are unanimous in holding that a decedent’s successor-in-interest may waive the privilege (see 67 ALR2d 1268; Cain v Killian, 156 Neb 132, 54 NW2d 368; Ohio Rev Code Annot § 2317.02 [A]).
In the absence of New York case law on point, we turn to the legislative history of the statute governing the attorney-client privilege. It is noted parenthetically that the court is mindful of the purpose of such privilege and the competing interests *697 that are also at stake when it is invoked (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376-377). On the one hand, the privilege promotes the use of legal representation by assuring clients that they may freely confide in their counsel without concern that such confidences may be divulged to outsiders (Matter of Priest v Hennessy, 51 NY2d 62, 67-68). On the other hand, to the extent that it bars production of relevant evidence, the privilege inevitably hampers the truth-finding process that is at the heart of our judicial system (Beard v Ames, 96 AD2d 119). The privilege therefore “is to be strictly construed in keeping with its purpose” (Matter of D'Alessio v Gilberg, 205 AD2d 8, 10). Conversely, it appears logically to follow that the right to waive the privilege should be construed as liberally as the purpose of the privilege may allow (see 8 Wigmore, Evidence § 2329, at 639 [McNaughton rev 1961]).
Although the legislative histories of CPLR 4503 and its statutory antecedents do not reflect any discussion of the issue raised here, the absence of such discussion is itself telling in this instance. The first statutory provisions concerning the privilege appeared as sections 835 and 836 of the Code of Remedial Justice, enacted in 1877. As the Court of Appeals has noted, such provisions were intended merely to codify the common law, rather than to alter it (see Spectrum Sys. Intl. Corp. v Chemical Bank, supra, at 377; Hurlburt v Hurlburt, 128 NY 420, 424). It is therefore important to note that, prior to such codification, the decisions uniformly recognized that the personal representative of the client’s estate succeeded to the right to waive the privilege in order to protect such property interests as were passed along by him (Greenlaw v King, 1 Beav 137, 145 [client’s executor may waive privilege]; Doe v Hertford, 13 Jur 632 [fiduciary of client’s estate or his heir may waive privilege]; Fossler v Schriber, 38 Ill 172 [client’s heir could waive privilege]). During the course of the following century, up to and including the enactment of CPLR 4503, the statutes embodying the privilege underwent various recodifications and amendments (see Code Civ Pro §§ 835, 836; Civ Pro Act §§ 353, 353-a), but virtually all of such changes concerned either exceptions to the privilege (in cases involving the admission or construction of wills) or the manner in which (rather than by whom) a waiver could be effected. In other words, there is no basis to conclude that the Legislature ever intended to narrow the category of persons who, under common law, had the right to waive the privilege when such a waiver would clearly benefit the client’s interest.
*698 The legislative history thus does not contradict the conclusion that the right to waive the privilege can survive the client. The purpose of the privilege, namely, to protect the client, also supports such conclusion. The present case, indeed, illustrates the point. During his lifetime, decedent not only had the right to prevent disclosure of his communications with his attorney, but also the right to disclose them. In other words, if he himself had brought the lawsuit for which the privileged documents are now sought, he could not have been deprived of their use in the litigation. As it happens, the lawsuit instead was brought on his behalf when he was unable to bring it himself, and it is now being continued on behalf of his estate by an individual who “represents him and stands in his place” (Hurlburt v Hurlburt, supra, at 425). Obviously, decedent had spoken to his attorneys in the knowledge that he might later choose to disclose their discussion. It can thus realistically be assumed that decedent would not have limited his confidences if he had also known that, after his death, the privilege could be waived by his chosen representative in order to advance some of the interests discussed.
Since the client could have waived the privilege to protect himself or to promote his interest, it is reasonable to conclude that, after his death, his personal representative stands in his shoes for the same purposes. Moreover, a contrary conclusion would in effect allow the shield intended for the client to be misappropriated for the benefit of the very persons against whom the client may have had claims.
Based upon the foregoing, it is concluded that a personal representative has the right to waive decedent’s attorney-client privilege on behalf of his estate. Mrs. Goldberg’s application is therefore granted in its entirety.